[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2006
THOMAS K. KAHN
CLERK

--------------------------------------

No. 05-11074
Non-Argument Calendar

--------------------------------------

D.C. Docket  No. 02-00125-CV-SPM-AK

LARRY BAXTER,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

----------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Florida
----------------------------------------------------------------

**(February 3, 2006)**

Before EDMONDSON, Chief Judge, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Larry Baxter appeals the district court's order affirming the denial by the Commissioner of Social Security of his application for supplemental security income (SSI), 42 U.S.C. § 1383(c)(3). No reversible error has been shown; we affirm.

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. Even if the evidence preponderates against the Commissioner's findings, "we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

Baxter first argues that substantial evidence does not support the administrative law judge's (ALJ's) disregarding of psychologist Dr. Nancy Ingwell's diagnosis of Baxter's antisocial personality disorder. Baxter contends that the ALJ should have included his antisocial personality disorder as a severe impairment and in the hypothetical question that the ALJ posed to the vocational expert (VE).

In determining whether a claimant is disabled, and thus qualified for SSI benefits, the Social Security regulations set out a five-step sequential evaluation

2

process.  See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  First, the claimant must show that he has not engaged in substantial gainful activity.  Id. Second, the claimant must prove that he has a severe impairment or combination of impairments.  Id.  At step three, if his impairment meets or equals a listed impairment, he automatically is determined to be disabled.  Id.  If he does not, he proceeds to step four, where he must prove that he is unable to perform past relevant work.  Id.  Fifth, if the claimant cannot perform past relevant work, the burden shifts to the Commissioner to show that other work that the claimant is able to perform is available in significant numbers in the national economy.  Id.

Baxter's argument concerns the second step: the determination of whether an impairment is severe.  Here, the ALJ determined that Baxter had several severe impairments: the loss of Baxter's right eye, left shoulder pain, depression, and borderline intellectual functioning.  But the ALJ specifically determined that the evidence was insufficient to support a determination that Baxter's antisocial personality disorder constituted a severe impairment.

We uphold the ALJ's determination as based on substantial evidence.  With the instant application for benefits, only one consulting psychologist, Dr. Ingwell,

diagnosed Baxter with antisocial personality disorder.[1]  Although the evaluation of psychologist Dr. Thomas Smith mentioned antisocial personality disorder, Dr. Smith did not diagnose Baxter with this disorder.  And Dr. Ingwell's diagnosis came from an examination that also produced what Dr. Ingwell admitted was an invalid Minnesota Multiphasic Personality Inventory-II (MMPI-II) test because Baxter had given exaggerated responses.  Further, during Baxter's testimony before the ALJ, Baxter did not indicate that his ability to do basic work activities was limited significantly by his antisocial personality disorder.  See Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (an impairment is "severe" when it "significantly limits claimant's physical or mental ability to do basic work activities").  In contrast, Baxter stated that he had quit his last job as a dishwasher because he thought his eyesight prevented him from performing his duties.  The ALJ properly disregarded a determination of antisocial personality disorder.[2]

---

[1]Baxter filed the instant application on 8 August 1996.  In connection with an earlier application for benefits, the evaluation of psychologist Dr. Paul Smith included, among other things, a diagnosis of antisocial personality. But this report was filed 28 June 1996, before the instant application and before Baxter lost his eye.

[2] Because the ALJ properly determined that Baxter's antisocial personality disorder was not severe, the ALJ properly omitted limitations resulting from this disorder in the hypothetical to the VE.  See Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (ALJ asks hypothetical posing the limitations that the ALJ determined as severe).

Baxter next argues that the ALJ should not have disregarded the VE's responses to his counsel's hypothetical questions, which contained Dr. Ingwell's conclusions on Baxter's mental residual functional capacity (MRFC). Baxter contends that Dr. Ingwell was the only psychologist who completed an MRFC assessment: thus, Dr. Ingwell's conclusions support the elements of Baxter's counsel's hypotheticals.

This argument concerns the fifth step: the ALJ concluded that Baxter was unable to do past relevant work, so the ALJ then determined that Baxter was able to perform other work available in the national economy. See Jones, 190 F.3d at 1228. In making this determination, the ALJ relied on testimony from the VE after posing a hypothetical question that encompassed all of what the ALJ deemed to be Baxter's impairments, including Baxter's borderline intellectual functioning and depression. See id. at 1229.[3] The VE testified that jobs available were a silver wrapper, a kitchen helper, and a cleaner or housekeeper.

Baxter's counsel then presented two hypotheticals to the VE, including the same facts as the ALJ's hypotheticals, but adding more limitations. Specifically,

---

[3]The ALJ's hypothetical asked if work existed in the regional or national economy that a 39-year old person with an eighth-grade education could perform, provided that this person was blind in the right eye, had no depth perception, should not work around moving or hazardous machinery or drive motorized vehicles, could not perform overhead work with the left arm, and only could perform work that was unskilled, simple, and required little independent judgment.

counsel referred to some of the moderate and marked limitations that Dr. Ingwell presented during her MRFC assessment.[4]  In response to counsel's hypotheticals, the VE opined that no jobs were available for a person with those moderate and marked limitations on his ability to function socially and in the workplace.

We uphold the ALJ's rejection of Baxter's counsel's hypotheticals, which were based on the limitations in Dr. Ingwell's MRFC assessment.  The ALJ determined that, despite Dr. Ingwell's conclusions on Baxter's MRFC, Baxter was not markedly impaired in his ability to understand, remember, and carry out simple instructions.  The ALJ was not persuaded by Dr. Ingwell's assessment because her conclusions were based on a psychological evaluation during which Dr. Ingwell admitted that Baxter provided exaggerated responses to the MMPI-II.  The ALJ also noted that the record supported a determination that Baxter could perform simple, unskilled work.  Baxter had work experience as a dishwasher and did not

---

[4]Among other things, Dr. Ingwell concluded that Baxter was markedly limited in his ability: to remember locations and work-like procedures; to understand and remember short and simple instructions; and to accept instructions and respond appropriately to criticism from supervisors.  Dr. Ingwell also concluded that Baxter was moderately limited in his ability: to carry out short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

allege that he quit because he was too depressed or could not understand how to do this work. And Baxter had not sought mental health care treatment.

The ALJ gave specific reasons for discounting Dr. Ingwell's psychological opinion on Baxter's MRFC: the ALJ properly concluded that Baxter did not have an impaired MRFC beyond his borderline intellectual functioning and depression. See Shafarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (ALJ must state with particularity and with supporting reasons the weight he gave different medical opinions). Substantial evidence thus supports the ALJ's subsequent refusal to include Dr. Ingwell's MRFC limitations in the hypothetical to the VE.

**AFFIRMED.**