[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14663
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00103-LJA-TQL

ROBIN G. STACY,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 7, 2016)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Robin Stacy appeals the District Court's affirmance of the Social Security Administration's denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g).[1]  He presents four arguments for the reversal of the District Court's decision: (1) the Administrative Law Judge's ("ALJ") Residual Functional Capacity ("RFC") assessment was not supported by substantial evidence because it failed to fully account for Stacy's vision loss and misstated the evidence in the record; (2) the ALJ's finding that his depression was a non-severe impairment was not supported by substantial evidence because it contradicted the evidence presented regarding his limited daily activities;  (3) the ALJ's finding that his testimony was only partially credible was not supported by substantial evidence; and (4) the ALJ's determination that alternative jobs existed in the national economy that he could perform was not supported by substantial evidence because it was based on an inaccurate RFC assessment.  After careful review of the record and the parties' briefs, we affirm.

## I.

We review *de novo* the District Court's decision as to whether substantial evidence supported the ALJ's determination.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  We will not, however, reverse a district court's decision on

---

[1]  Stacy applied for disability insurance benefits in July 2010.  He alleged a disability onset of March 26, 2005.  His disability report identified the following medical conditions: heart disease, diabetes, depression, and cognitive and visual impairments cause by a stroke.  He claimed that his physical condition, the side effects of medications and depression rendered him unable to work.

the basis of an error that did not affect the district court's ruling. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

Where we review a district court's decision as to whether substantial evidence supported an ALJ's determination, our review is limited to whether substantial evidence existed, and whether the correct legal standards were applied. *Wilson*, 284 F.3d at 1221. Substantial evidence is more than a scintilla, and it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). In determining whether substantial evidence supports the ALJ's conclusion, we may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ. *Id.* Nevertheless, we will not affirm simply because some rationale might have supported the ALJ's conclusions; the ALJ must state with at least some measure of clarity the grounds for his decision. *Id.* at 1179.

In determining whether a claimant is entitled to social security disability benefits, an ALJ engages in a five-step process. 20 C.F.R. § 404.1520(a)(4)(i)-(v). In the first step, the ALJ determines whether the claimant is currently working. If he is not currently working, then Step Two asks whether he has a severe medically determinable physical or mental impairment that falls under certain duration requirements. If he does have such an impairment, the ALJ proceeds to Step Three, which asks whether the impairment meets certain severity requirements. If

the impairment is sufficiently severe, then the claimant will be found disabled.  If the impairment does not meet prescribed requirements, then the ALJ proceeds to Step Four, which asks whether the claimant possesses sufficient RFC to continue doing his past relevant work.  Finally, if the claimant does not possess the RFC to do his past relevant work, Step Five requires the ALJ to determine whether, considering the claimant's RFC, age, education, and work experience, he can make an adjustment to other work.  *Id.*

At Step Two, the ALJ's inquiry is whether the claimant has a severe impairment that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  Step Two is a threshold inquiry for the ALJ. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  Only *de minimus* claims, based on the most trivial impairments, may be rejected.  *Id.*

Step Three, by contrast, requires the ALJ to determine whether the claimant's alleged impairment "meets or equals" one of the listings in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations (the "Listings").  20 C.F.R. § 416.920(a)(4)(iii).  The ALJ need not, however, specifically enumerate the Listings under which she is evaluating the claimant's condition in Step Three, so long as the ALJ's finding is implicit in her decision.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ had properly undertaken Step Three of the analysis, even though he did not explicitly state that

4

claimant's impairments were not contained in the Listings, because that determination was implicit in the ALJ's decision).  The ALJ must consider the combined effects of all the claimant's impairments when evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  The severity of a medically ascertained disability is measured in terms of its effect on the claimant's ability to work.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Here, substantial evidence supports the ALJ's decision, despite the misstatements and omissions that the Commissioner concedes.  First, Stacy waived any argument that his vision loss was a severe impairment under Listing 2.04(A) by not raising that argument in the District Court.  *See Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).  Second, the ALJ's misstatements and omissions were harmless because the ALJ considered Stacy's visual limitations as a whole and applied the proper legal standard when assessing his RFC.  *See Diorio*, 721 F.2d at 728.  The ALJ discussed the evidence presented in the medical record, Stacy's testimony, Dr. Flowers's report, and Dr. Ponterio's report.  Relying on these, he formulated an RFC that applied the correct legal standard by including all of the limitations supported by the record.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  The RFC was consistent with Dr. Ponterio's assessment, despite the ALJ's misstatement of Dr. Ponterio's findings.  Although the ALJ did not mention Dr. Flowers's explanation regarding Stacy's visual efficiency, he nevertheless described Stacy's

impairments as a whole in a manner consistent with Dr. Flowers's opinion, and his RFC assessment that Stacy could perform light work is consistent with Dr. Flowers's assertion that Stacy could "function at an impaired level due to the sparing of his central vision." Moreover, Stacy's own description of his daily activities showed that he was capable of driving a car, using a computer, and watching television for significant portions of the day, which supports the ALJ's finding that Stacy was capable of his previous work as a newspaper editor or at least capable of other work that involved less visually demanding tasks. The ALJ did not fail to state the weight he gave the medical opinions in the record, because he thoroughly explained how the evidence in the record informed his RFC assessment. The ALJ's finding as to the extent of Stacy's visual limitations was therefore supported by substantial evidence and applied the correct legal standard.

## II.

At the second step of the five-step analysis, the claimant bears the burden of proving that she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "Basic work activities" include: understanding, carrying out, and remembering simple instructions; use of judgment; responding

appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel*, 800 F.2d at 1031. It is a threshold inquiry where only the most trivial impairments are rejected. *Id.* The claimant's burden at Step Two is mild. *Id.*

If the ALJ fails to articulate reasons for rejecting a claimant's testimony, that testimony must be accepted as true. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Likewise, a treating physician's testimony must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2) (stating that, generally, more weight is given to opinions from treating sources). The ALJ must state with particularity the weight given the different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Taken alone, the opinion of a non-examining physician does not constitute substantial evidence to support the Commissioner's decision. *Id.* at 280. The ALJ may consider the reports and assessments of state agency physicians as expert

7

opinions. 20 C.F.R. § 416.927(f)(2)(i). An ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sharfarz*, 825 F.2d at 280.

The ALJ has a basic obligation to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A full and fair record enables the reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence. *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). We must reverse when the ALJ has failed to provide sufficient reasoning to enable us to conclude that the proper legal analysis has been conducted. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In determining the severity of a mental impairment, the ALJ rates the degree of functional limitations in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). The ALJ rates each of the first three areas on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4). If the first three areas are rated either "none" or "mild," and there are no episodes of decompensation, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id.* § 416.920a(d)(1).

8

We find that the ALJ properly applied the four-area test of 20 C.F.R. § 416.920a, so the only remaining issue is whether his findings were supported by substantial evidence.  The ALJ's finding that Stacy's depression was non-severe and did not create any mental limitations on his ability to work was supported by substantial evidence in the form of Stacy's own testimony, the Youngs' statements, and Stacy's medical records.  Stacy's testimony revealed that although he claimed his depression limited his activities, he actually was able to feed his dogs, go to town to shop, and manage his own affairs.  The ALJ gave the Youngs' assessments of Stacy's medical condition less weight because of their status as non-medical professionals.  This analysis of the Youngs' statements was reasonable and was explained with particularity by the ALJ.  Finally, in reviewing the medical record, the ALJ noted that Stacy's depression, though it was a diagnosed impairment, was not treated as severe by his treating physician, who prescribed some drugs but did not refer Stacy to a mental health professional.  Substantial evidence therefore supported the ALJ's finding that Stacy's depression was a non-severe impairment and that he had no mental limitations on his ability to work.

## III.

When a claimant attempts to establish disability through his own testimony detailing subjective symptoms, we apply a "pain standard" test requiring a showing of: "(1) evidence of an underlying medical condition and either (2) objective

9

medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also* 20 C.F.R. § 404.1529 (discussing how the ALJ evaluates a claimant's symptoms).

The ALJ must articulate specific reasons for questioning the claimant's credibility if subjective symptom testimony is critical to the claim. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). We will not disturb a clearly articulated credibility finding that has substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562. The credibility finding does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable us to conclude that the ALJ considered the medical condition as a whole. *Dyer*, 395 F.3d at 1210. Participation in everyday activities of short duration does not disqualify a claimant from disability where other evidence supports a finding of disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). No inference may be drawn from a physician's silence on a patient's ability to work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

The ALJ articulated his specific reasons for finding Stacy's testimony only partially credible. Specifically, he found that Stacy's documented activities of daily living, despite his impairments, were substantially more consistent with an

10

individual able to sustain competitive work activity than they would be of an incapacitated person; that no treating physician had opined that Stacy was disabled or had greater restrictions than those listed in the RFC the ALJ found; and that the objective medical evidence was consistent with an ability to perform sustained light work, subject to the limitations specified in the RFC. Stacy's daily activities, which included feeding his dogs and going to the store, did not automatically imply that he is not disabled, but that does not mean that the ALJ erred by considering those activities as evidence of his ability to work in light of the other evidence in the record. *See Lewis*, 125 F.3d at 1441. As the ALJ explained, Stacy's testimony about his daily activities, which included feeding his dogs, driving, shopping, watching television, and using the computer, combined with the medical evidence that was consistent with an ability to perform light work, suggested that Stacy's testimony about the extent of his symptoms was not credible. The ALJ did not consider the absence of treating physicians' opinions as to Stacy's ability to work as affirmative evidence of his ability to work, which would have been error; rather, after describing the various medical reports that supported an ability to do light work, he noted that no medical evidence contradicted such a finding. *Lamb*, 847 F.2d at 703. The ALJ articulated specific reasons for his finding, which was supported by substantial evidence. *See Foote*, 67 F.3d at 1562.

11

IV.

An ALJ may use vocational expert testimony to determine whether a claimant can return to past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990). For a vocational expert's answer to a hypothetical question to constitute substantial evidence, the hypothetical question must comprise all of the claimant's severe impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Furthermore, the burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony. *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986).

The ALJ properly relied on the testimony, by interrogatory, of a vocational expert who stated that an individual with the limitations included in the ALJ's RFC assessment would be able to engage in substantial gainful activity. Because that RFC assessment was supported by substantial evidence, as explained in detail above, the ALJ's reliance on the testimony provided substantial evidence for his determination at Step Five that Stacy could perform work in the national economy. *Lucas*, 918 F.2d at 1573 n.2; *Pendley*, 767 F.2d at 1562.

AFFIRMED.